

**ORIGINAL**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2021 MAR 26  PM 3: 22

DEPUTY _____ *c1*

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | |
| v. | NO.  **3-21CR0144-L** |
| | |
| MARK HOPKINS | |
| a.k.a. Doctor Bitcoin | |

### FACTUAL RESUME

In support of Mark Hopkins's plea of guilty to the offense alleged in Count One of the Information, Hopkins, the defendant; Ralph de la Garza II, the defendant's attorney; and the United States of America (the government) stipulate and agree to the following:

### ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Information, charging a violation of 18 U.S.C. § 1960, that is, Operation of an Unlicensed Money Transmitting Business, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.*   That the defendant Mark Hopkins, as charged in the Information, conducted, controlled, managed, supervised, directed, or owned all or part of a money transmitting business;

*Second.*   That the money transmitting business affected interstate or foreign commerce in some manner or degree; and

*Third.*   That the defendant failed to comply with the money transmitting business registration requirements under Title 31, United States Code, Section 5330.

---

[1] Fourth Circuit Pattern Jury Instruction 18 U.S.C. § 1960 (4th Cir. 2020) (modified).

## STIPULATED FACTS

1.      Mark Hopkins admits and agrees that starting in or about September 2019,

and continuing through October 2020, within the Northern District of Texas Dallas

Division, and elsewhere, he knowingly conducted, controlled, managed, supervised,

directed, or owned all or part of a money transmitting business which affected interstate

or foreign commerce in some manner or degree, and that he failed to comply with the

money transmitting business registration requirements under Title 31, United States

Code, Section 5330.

2.      Hopkins admits that "transmitting," as used in the Information and this

Factual Resume, includes transferring funds on behalf of the public by any and all means,

including but not limited to, transfers within this country or to locations abroad by wire,

check, draft, facsimile, or courier.

3.      Hopkins further admits that money transmitting businesses (MTBs), as

defined under 31 U.S.C. § 5312(a)(2), must comply with the Bank Secrecy Act and must

register with the Financial Crimes Enforcement Network (FinCEN). Anti-Money

Laundering (AML) regulations require MTBs to identify and verify their customers and

customers' personal data, known as "Know Your Customer" (KYC). The KYC process

can help identify customers that are engaged in unlawful activity by requesting and

requiring their full names, dates of birth, addresses, and some form of identification.

Additionally, to comply with the Bank Secrecy Act, MTBs must file a Currency

Transaction Report, when they have a cash-in or cash-out currency transaction, or

multiple transactions, totaling more than $10,000 during one business day for any one person, or on behalf of any one person.

4.     Mark Hopkins, a.k.a. "Dr. Bitcoin," admits that he ran a MTB as his primary source of income, offering services to the public to convert U.S. dollars to cryptocurrency, mainly Bitcoin (BTC). Hopkins would use online platforms like Localbitcoins.com and Paxful.com to advertise his services.

5.     Hopkins admits that he would negotiate a fee with his customers to convert physical U.S. dollars to cryptocurrency. Once Hopkins received cash from his customers, he would purchase BTC and send the amount of BTC in dollars to his customers' BTC wallets, minus his fee. If a customer was in the Dallas-Fort Worth metroplex, Hopkins would meet the customer in person to collect the cash. Outside of asking for a form of identification, Hopkins never took any additional steps to verify the source of the funds sent to him.

6.     Hopkins admits that at no time was he licensed to engage in the business of transmitting money by the State of Texas or Pennsylvania. At no time was Hopkins registered as a money transmitting business with the United States Treasury Department, as required under 31 U.S.C. § 5330.

7.     In or around September 2019, Hopkins was approached by customer M.H. to convert U.S. dollars to BTC. Once Hopkins received the U.S. dollars from M.H., he was directed to send BTC to a BTC wallet controlled by M.H.

8.     The US dollars provided by M.H. to Hopkins were connected to a lottery scam, in which M.H. and an individual located in Nigeria (Coconspirator 1) would direct

victims to send funds directly to M.H.  M.H. would then send the funds to Hopkins to convert to BTC.  Hopkins had direct communications through messaging applications with M.H. and Coconspirator 1.  Hopkins was aware that Coconspirator 1 was located in Nigeria, but never asked for any form of identification from him.

9.     On August 13, 2020, Hopkins, while speaking to M.H., stated the following while discussing the conversion of cash to cryptocurrency:

> "In general, though, I don't want to get into details of whatever business they're involved in.  It keeps my mind focused on what my actual business is about, rather than getting involved in their business dealings."

10.    On September 16, 2019, Hopkins directed M.H. on how to circumvent financial institution reporting requirements:

> Hopkins:     "There's not really a limit.  Banks will always do an IRS report when you deposit more than $9500 at a time."
>
> M.H.:     "So lets say to be on the safer side. We should go with 8000$."

11.    On September 16, 2019, Hopkins direct M.H. to lie to financial institutions concerning the purpose of M.H.'s business:

> Hopkins:     "I'm set up a marketing company, so tell them you're paying for a marketing campaign; If they need more details, say you're using me to hire bloggers and stuff;  This is my company URL: *********.  We actually do marketing work, so it's something that checks out."

12.    On September 16, 2019, Hopkins discussed his fees with M.H.:

> Hopkins:     "Anything less than $7500 is 7%. Anything more is 5%; If you go above $75k in a single day, I can sometimes get a discount.  And anything in the millions is a "let's discuss" situation, But [sic] usually can lead to better deals, depending on the situation."

13.     Once Hopkins received cash payments from M.H., Hopkins would purchase BTC and transfer the BTC to a BTC wallet controlled by M.H.

14.     From in or around September 2019 to in or around October 2020, M.H. conducted thirty-seven transactions with Hopkins, converting between $550,000.00 to $1,500,000.00.

15.     The defendant agrees that the defendant committed all the essential elements of the offense(s). This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Information.

AGREED TO AND STIPULATED on this 26th day of _____March_____, 2021.


_____
Mark Hopkins
Defendant

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

_____
Sid P. Mody
Assistant United States Attorney
Texas State Bar No. 24072791
1100 Commerce St. Suite 300
Dallas, Texas 75242
siddharth.mody@usdoj.gov


_____
Ralph de la Garza II
Attorney for Defendant

Factual Resume—Page 5